# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RECOVERY FUND II USA LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 18-2039-MN-JLH |
| | ) |
| RABOBANK, NATIONAL ASSOCIATION, BANKRUPTCY MANAGEMENT SOLUTIONS, INC., ERIC KURTZMAN, BMANSOL HOLDINGS LP, BMANSOL INTERMEDIATE HOLDINGS INC., UTRECHT – AMERICA HOLDINGS, INC., STONE POINT CAPITAL, LLC, ABC COMPANIES 1-10, AND JOHN and JANE DOES 1-10, | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Recovery Fund II USA LLC ("Plaintiff" or "Recovery Fund") filed this class action lawsuit against Rabobank, National Association, Bankruptcy Management Solutions, Inc., Eric Kurtzman, Stone Point Capital, LLC, ABC Companies 1-10, and John and Jane Does 1-10 on December 21, 2018. (D.I. 1.) After the named defendants moved to dismiss, Plaintiff amended its complaint on April 16, 2019 to add BMANSOL Holdings LP, BMANSOL Intermediate Holdings Inc., and UTRECHT – America Holdings, Inc. as defendants and to assert additional claims. (D.I. 25 ("Compl.").) Plaintiff then voluntarily dismissed the new defendants, and the remaining defendants moved to dismiss the Amended Complaint in its entirety. (D.I. 34; D.I. 37.) I recommend that the motions to dismiss be GRANTED.

## I. BACKGROUND[1]

Defendant Rabobank, National Association ("Rabobank") is a Delaware entity that provides banking services to bankruptcy trustees. (Compl. ¶ 30.) Defendant Bankruptcy Management Solutions, Inc. ("BMS") is a Delaware corporation that provides technology services to Chapter 7 trustees. (*Id.* ¶ 34, 35.) Defendant Eric Kurtzman is the Chief Executive Officer of BMS. (*Id.* ¶ 37.) On May 21, 2019, Plaintiff voluntarily dismissed Defendant Utrecht-America Holdings, Inc., and on May 23, 2019, Plaintiff voluntarily dismissed Defendants BMANSOL Intermediate Holdings Inc., BMANSOL Holdings LP, and Stone Point Capital LLC. (D.I. 31; D.I. 33.) The unidentified defendants (ABC Companies 1-10, and John and Jane Does 1-10) have not been served.

According to the Amended Complaint, Defendants have been, and are currently, involved in a fraudulent "scheme" to take funds from Chapter 7 Bankruptcy estates "by disguising and hiding . . . inappropriate charges behind supposed bank service fees." (Compl. ¶¶ 1-3.) Although Plaintiff's theory as to how Defendants' actions amount to fraud is not entirely clear, Plaintiff focuses on two aspects of Defendants' conduct: (1) the size of the fee Rabobank charges the trustee for banking and technology services; and (2) the fact that Rabobank gives some or all of that fee to BMS. (*Id.* ¶¶ 4-7.) Plaintiff alleges that Rabobank and BMS are engaging in the scheme "in all other cases proceeding under [C]hapter 7 of the Bankruptcy code where Rabobank has been contracted for routine banking services" (*id.* ¶ 21)—which is a lot of cases because Rabobank is

---

[1] I assume the facts alleged in the Amended Complaint to be true for purposes of resolving the motions to dismiss for failure to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In resolving the motion, the Court may consider facts alleged in the complaint and its attachments, matters of public record, and "document[s] integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d, 1410, 1426 (3d Cir. 1997); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

alleged to be one of the nation's largest providers of banking services to Chapter 7 trustees (*id.* ¶¶ 31, 103).

The specific allegations here arise out of a bankruptcy action that was pending in the United States Bankruptcy Court for the District of Delaware. On July 22, 2010, Nexity Financial Corporation filed for bankruptcy (the "Nexity Bankruptcy") under Chapter 11 of the Bankruptcy Code. (*Id.* ¶ 71; *In re Nexity Fin. Corp.*, No. 10-12293-KJC (Bankr. D. Del.).) The action was converted to a Chapter 7 (liquidation) case on July 22, 2011, and Jeoffrey L. Burtch was appointed as the Chapter 7 Trustee (the "Nexity Trustee").[2] (Compl. ¶ 71.) Plaintiff Recovery Fund was a creditor in the Nexity bankruptcy by virtue of an unsecured claim it bought from Bank of America in 2016. (*Id.* ¶ 29.)

During his administration of the estate, the Nexity Trustee contracted with Defendant Rabobank to receive "banking and technology services" in exchange for an annual fee of 1.75% of the estate's funds deposited with the bank (the "Bank and Technology Services Fee"). (*Id.* ¶¶ 4, 32, 33, 73, 75.) Pursuant to its agreement with the Nexity Trustee, Rabobank was permitted to charge the Bank and Technology Services Fee monthly, regardless of the number of services provided that month. (*Id.*) The written agreement disclosed to the Nexity Trustee that some or all of the Bank and Technology Services Fee might be passed on from Rabobank to Defendant BMS:

> BMS may receive fees from Rabobank for placing funds with it . . . . Rabobank may charge you a fee up to the maximum amount that such fee is allowable under applicable law, including regulatory guidelines, **a portion of which or all of which may be paid to BMS** or other third party providers for providing technology services, case

---

[2] In a Chapter 7 case, the United States Trustee appoints an impartial case trustee to administer the case and liquidate the debtor's nonexempt assets. . . . The main role of a trustee in an asset case . . . is to liquidate the debtor's nonexempt assets in a manner that maximizes the return to the debtor's unsecured creditors." *In re Messina*, 687 F.3d 74, 79 (3d Cir. 2012) (citing 11 U.S.C. §§ 701, 704, 721).

> management and other banking related services to you. You authorize Rabobank to debit your Account for payment of such fees. Such fees will be set forth on your statement in one line item titled "Bank and Technology Services Fee."

(D.I. 49, Ex. 1 at 10 (emphasis added); Compl. ¶¶ 4, 73.)[3]

Liquidation of the Nexity Estate was delayed for several years pending litigation over an asset owned by the estate. (*Id.* ¶¶ 16, 82.) During that time, the bulk of the estate remained in an account at Rabobank, which charged the monthly Bank and Technology Services Fee. (*Id.* ¶ 17.) According to the Amended Complaint, Rabobank gave some or all of that fee to BMS. (*Id.* ¶ 76.)

On September 4, 2018, the Nexity Trustee filed with the Bankruptcy Court a proposed Final Report listing the "cash receipts and disbursements for each estate bank account (the 'Transaction Log'), the proposed plan of distribution, and the Trustee's request for 'reasonable compensation' as provided by the Bankruptcy Code." (*Id.* ¶ 83.) *See* 28 C.F.R. § 58.7. According to the Final Report, a total of $93,593.37 was disbursed to Rabobank for Bank and Technology Services Fees. (*Id.* ¶ 84.) The disbursements to Rabobank occurred monthly, regardless of the amount of activity in the estate's bank accounts that month, and they are each listed on the Transaction Log as a "Bank and Technology Services Fee." (Compl. ¶¶ 83-88, 152, 159; *In re Nexity Fin. Corp.*, No. 10-12293-KJC, D.I. 439 (Bankr. D. Del. Sept. 4, 2018).) The Amended Complaint does not dispute that the fees charged by Rabobank correspond to an annual rate of 1.75%, in accordance with the agreement between Rabobank and the Nexity Trustee. (Compl. ¶ 33; Tr. 53:5-12.)

---

[3] In resolving the motions to dismiss, the Court may consider the contract between the Chapter 7 Trustee and Rabobank because it is integral to the claims (*see, e.g.*, Compl. ¶¶ 4, 73) and may take judicial notice of the court records from the Nexity bankruptcy. *See* fn. 1, *supra*; *M & M Stone Co. v. Pennsylvania*, 388 F. App'x. 156, 162 (3d Cir. 2010). (*See also* Compl. ¶ 22.)

After receiving the Trustee's Final Report, Recovery Fund sought information from the Trustee about the Bank and Technology Services Fees and the services performed by Rabobank in exchange for the fees. (*Id.* ¶ 80.) On September 24, 2018, during the course of its discussions with the Trustee, Recovery Fund learned that Rabobank was giving some or all of the fees to BMS. (*Id.*) Recovery Fund made an informal request (the Amended Complaint doesn't say to whom) for the production of agreements between the Trustee, BMS, and/or Rabobank, but that request was denied. (*Id.* ¶ 91.) Around the same time, Recovery Fund's counsel received a voicemail from BMS's CEO, Defendant Eric Kurtzman, asking to talk "holistically about some business concepts." (*Id.* ¶ 92.) According to the Amended Complaint, "[t]he intention behind Kurtzman's voicemail was clear – Plaintiff and/or Plaintiff's counsel would be financially rewarded if they agreed to stop investigating BMS's involvement and drop their objection in the Nexity Bankruptcy . . . ." (*Id.* ¶ 93.)

Recovery Fund had the opportunity in the bankruptcy case to obtain formal discovery regarding the Bank and Technology Services Fee, but it did not make any formal discovery requests or issue any subpoenas. (Tr. 40:25-41:3.) It did, however, file an objection challenging the fees on October 24, 2018. (Compl. ¶¶ 94, 95; D.I. 36, Ex. A; *In re Nexity Fin. Corp.*, No. 10-12293-BLS, D.I. 443 (Bankr. D. Del. Oct. 24, 2018).) The sole bases for its objection were as follows:

> 7. Creditor believes that the bank servicing fees listed in the Trustee's Report are inappropriate, including because they relate to undisclosed services provided to the Chapter 7 Trustee that extend well beyond ordinary and necessary banking services.
>
> 8. Creditor therefore believes the bank servicing fees listed in the Trustee's Report should be disallowed; in the alternative, prior to any decision from this Court on the appropriateness of the bank servicing fees listed in the Trustee's report, Creditor should be afforded reasonable time

5

to conduct discovery regarding the appropriateness of such fees and, if necessary, request an evidentiary hearing before the Court.

(D.I. 36, Ex. A at 2.)

On November 15, 2018, the Bankruptcy Court held a hearing regarding the Trustee's Final Report and Recovery Fund's objection. (D.I. 36, Ex. B ("Bankr. Tr. _"); Compl. ¶ 22 n.3.) Recovery Fund did not issue any discovery requests or subpoenas prior to the hearing (despite having had two months to do so). (Tr. 40:25-41:3; Bankr. Tr. 12:3-13:3.) At the hearing, counsel for the Trustee explained the Bank and Technology Services Fee as follows:

> With respect to the fees, itself, Chapter 7 Bankruptcy Trustees used approved software vendors and corresponding bank partners in the administration of Chapter 7 bankruptcy cases. The trustee contracted with BMS and Rabobank, and prior to that BNY Mellon to provide integrated case management, software and banking services. These services enabled the trustee to administer his asset in no asset cases by, among things, managing estate cash, providing documentation to assure proper accounting of all estate assets, to prepare uniform reports required by the bankruptcy code and federal regulations. And it is the BMS software that generated the final report and all exhibits that are before the court today.
>
> In exchange for these services, BMS and Rabobank deduct banking and technology service fees from the estate's bank account at Rabobank.

(Bankr. Tr. 7:10-25.)[4] The Bankruptcy Court then heard from a representative of the U.S. Trustee's Office, who indicated that she did not object to the fees charged by Rabobank based on

---

[4] It appears that those types of fee arrangements are now the norm in Chapter 7 bankruptcy cases. The Nexity Trustee's attorney went on to describe the history of such fees at the hearing:
> Historically, software companies that develop proprietary software designed to assist trustee's in administering cases align with banks to jointly market their services. Trustees received integrated case management software and banking services in exchange for trustees depositing all estate funds in a particular bank. The banks and software companies received their cost for these integrated case managing software and banking services by paying Chapter 7 Trustees lower rates of interest on estate deposits than they paid comparable commercial clients. These integrated case management software and banking services provide the

6

the U.S. Trustee's view that they were "a valid exercise of [the Nexity Trustee]'s business judgment." (Bankr. Tr. 10:1-3.) She further stated that "Rabobank is an authorized depository which works with BMS to provide [an] integrated computer based system that enables a Chapter 7 Trustee to administer Chapter 7 cases, manage estate cash and share proper accounting and prepare financial reports." (Bankr. Tr. 10:21-25.) She also stated that the fees charged by Rabobank and BMS were "within the market rate" for such services. (Bankr. Tr. 10:15-19.)

After hearing from Recovery Fund's counsel, the Bankruptcy Court denied its request to permit additional time for discovery and overruled its objection to the challenged fees:

> I'm going to overrule the objection. I think the trustee has demonstrated by the evidence that's been submitted, which is uncontroverted by any other contrary evidence, that he's properly exercised his business judgment in continuing to participate in a process with service providers that the U.S. Trustee agrees are necessary for the unique needs in administering a Chapter 7 estate and of preparing the appropriate reports for the court and for the U.S. Trustee, and for everyone, for that matter, in the case.

---

> information and necessary accounting safeguards to ensure efficient cost-effective administration of bankruptcy estates.
> When the interest rates bottomed out after the financial crisis the previous models for payment of these services became unworkable and in 2011 the U.S. Trustee temporarily removed the prohibition and the assessment of bank fees in Chapter 7 cases. Since that time bank fees have been charged on a monthly basis based on the total balance on deposit in the account.

(D.I. 36, Ex. 2.) The Seventh Circuit, confronted earlier this year with an antitrust case against Rabobank and BMS challenging the same fees, described the situation similarly. *McGarry & McGarry, LLC v. Bankr. Mgmt. Sols., Inc.*, 937 F.3d 1056, 1061-62 (7th Cir. 2019) ("Now the standard agreement requires the estate to pay a combined fee for software and banking services based on a percentage of the funds in its bank account."); *see also Spinner Consulting LLC v. Bankr. Mgmt. Sols., Inc.*, 604 B.R. 660, 664-668 (D.N.J. 2019) (describing the genesis of BMS's and Rabobank's fee structure), *aff'd,* No. 19-2371, 2020 WL 41905 (3d Cir. Jan. 3, 2020).

7

(Bankr. Tr. 15:12-21.) Despite overruling Recovery Fund's objection, the Bankruptcy Court suggested that Recovery Fund "raise the objection in a case in which it's economically appropriate[5] . . . if it's a genuine concern that has system-wide implications . . . ." (Bankr. Tr. 15-22-25; Compl. ¶ 95.)

Recovery Fund did not appeal the Bankruptcy Court's overruling of its objection or the denial of its request for additional time to conduct discovery. Nor has it ever sought to reopen the Nexity bankruptcy case. (Tr. 39:21-42:21.)

Instead, it filed this class action RICO case. Plaintiff's Amended Complaint contains eleven counts against Rabobank, BMS, and Kurtzman, styled as follows: Conspiracy to Commit Violations of the Federal Racketeer Influenced and Corruption Organizations Act ("RICO") (Count I); RICO – Commission of Wire Fraud and Mail Fraud 18 U.S.C. §§ 1341, 1343 (Count II); RICO – Commission of Embezzlement Against the Bankruptcy Estate 18 U.S.C. § 153 (Count III); Right to Priority Payment for Proof of Claim 42 U.S.C. § 1983, 11 U.S.C. § 726 (Count IV); Fraud (Count V); Constructive Fraud (Count VI); Conspiracy (Count VII); Negligent Misrepresentation (Count VIII); Illegal and/or Unauthorized Distribution (Count IX); Violation of Federal Trade Commission Act Section 5: Unfair or Deceptive Acts or Practices (Count X); and Unjust Enrichment (Count XI). Plaintiff requests class certification for all eleven counts.

Rabobank, BMS, and Kurtzman filed the pending motions to dismiss on May 31, 2019 (D.I. 34; D.I. 37), and briefing was complete on August 23, 2019. (D.I. 47; D.I. 48.) Plaintiff requested oral argument (D.I. 50), and I heard oral argument on December 10, 2019. ("Tr._".)

---

[5] The Nexity Trustee stated at the hearing that Recovery Fund's pro-rata distribution would have been $6,975 more if Rabobank's entire $93,593.57 fee was returned to the estate. (Bankr. Tr. 6:8-17, 7:4-9; Compl. ¶ 72.)

## II. LEGAL STANDARDS

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A possibility of relief is not enough. *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## III. DISCUSSION

Although the Amended Class Action Complaint spans seventy pages and contains eleven counts, Plaintiff's claims all converge on a single wrong: the alleged illegality of the Bank and Technology Services Fee. All of Plaintiff's claims rely upon its assertions that the fee violated the Bankruptcy Code because it was calculated based on a percentage of the account balance regardless of the number of services performed and because it was shared with BMS. The fee was approved, however, by the Bankruptcy Court over Plaintiff's objection. Plaintiff did not appeal or seek to reopen the Bankruptcy Court's final judgment,[6] and the estate funds have all been distributed. Plaintiff cannot now challenge that judgment by filing a complaint in district court. Whether you call it claim preclusion or an improper collateral attack on the Bankruptcy Court's judgment, Plaintiff cannot proceed in this Court.

---

[6] There are several mechanisms to challenge a decision or order in a bankruptcy case. A party may file a direct appeal, Fed. R. Bankr. P. 8003, move to reopen the bankruptcy case, Fed. R. Bankr. P. 5010, or seek relief from a judgment or order, Fed. R. Bankr. P. 9024.

I recommend that Defendants' Motions to Dismiss be GRANTED.

A.  **Plaintiff's claims are barred by claim preclusion.**

Defendants argue that the Bankruptcy Court's final order approving the Trustee's Final Report, over Plaintiff's objection, bars Plaintiff's claims here under the doctrine of claim preclusion. I agree.

"Claim preclusion, formerly referred to as res judicata, gives dispositive effect to a prior judgment if a particular issue, although not litigated, could have been raised in the earlier proceeding. Claim preclusion requires: (1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privities; and (3) a subsequent suit based on the same cause of action." *Bd. of Trustees of Trucking Employees of N. Jersey Welfare Fund, Inc. – Pension Fund v. Centra*, 983 F.2d 495, 504 (3d Cir. 1992). If those factors are satisfied, "a claim that was or could have been raised previously" must be dismissed. *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999).

Even though bankruptcy cases are "fundamentally different from the typical civil action," the principle of claim preclusion applies to judgments entered by bankruptcy courts. *See CoreStates*, 176 F.3d at 194-95. Accordingly, an "order rejecting objections is a final adjudication sufficient to preclude later claims." *Id.* at 201. In determining whether a later civil suit is "based on the same cause of action" as an objection previously made in a bankruptcy case, the Third Circuit instructs courts to consider "the totality of the circumstances" in each proceeding and determine "whether there is an 'essential similarity of the underlying events.'" *Id.* at 194 (quoting *United States v. Athlone Indus.*, 746 F.2d 977, 984 (3d Cir. 1984)).

That test is met here. Plaintiff's claims are all based on the same assertion it made in its objection in the bankruptcy proceedings, namely, that the Bank and Technology Services Fee was

inappropriate. Its RICO claims (Counts I-III) are all based on its allegation that Defendants committed acts of racketeering for the purpose of "obtain[ing] improper payment for administrative expenses under the Bankruptcy Code." (Compl. ¶¶ 122, 130, 137.) Plaintiff's § 1983 claim (Count IV) is likewise based on its argument that the Bank and Technology Services Fees were "improper and/o [sic] illegal, including because [they] violated the priority framework established by the Bankruptcy Code." (Compl. ¶ 145.) As are Plaintiff's fraud claims (Counts V-VI), its conspiracy claim (Count VII), its negligent misrepresentation claim (Count VIII), its "illegal and/or unauthorized distribution" claim (Count IX), its FTC claim (Count X), and its unjust enrichment claim (Count XI). (Compl. ¶¶ 155, 162, 166, 180, 183, 190, 194.)

Plaintiff makes a number of arguments why claim preclusion should not apply. First, Plaintiff states that it intends to argue that the Bank and Technology Services Fee was illegal for the additional reasons that it violated Sections 327, 330, 507, and 726 of the Bankruptcy Code. Plaintiff argues that it should not be precluded from moving forward on its claims here because it never raised those additional theories in the bankruptcy proceeding. I disagree. That Plaintiff now intends to argue a new theory about why the Bank and Technology Services Fee was inappropriate has no bearing on the application of claim preclusion. Rather, "'[c]laim' is defined broadly in transactional terms, regardless of the number of substantive theories advanced in the multiple suits by the plaintiff." *Gregory v. Chehi*, 843 F.2d 111, 117 (3d Cir. 1998). Plaintiff made an objection to the fee in the bankruptcy proceeding and is thus barred from relitigating the propriety of the same fee here. Moreover, claim preclusion bars relitigation of a claim even in cases where a particular argument wasn't raised, but could have been raised, in the earlier proceeding. *CoreStates*, 176 F.3d at 194-95. And Plaintiff concedes that it could have argued in the bankruptcy proceeding that the challenged fees violated sections of the Bankruptcy Code. (Tr. 40:1-41:3.)

11

Plaintiff next contends that its RICO claims should not be barred because it could not have raised those in the bankruptcy proceeding. I reject that argument. "RICO is many things, but it is not an exception to *res judicata*." *Matter of Met-L-Wood Corp.*, 861 F.2d 1012, 1016 (7th Cir. 1988). If a party loses an objection in a bankruptcy case, it cannot mount a collateral attack on the final judgment of the bankruptcy court by restyling the same objection as a civil RICO claim. *Id.* at 1018 (holding that a bankruptcy trustee was barred from filing a RICO suit against a bankruptcy debtor and others involved in an asset sale because it was a "thinly disguised collateral attack on the [bankruptcy court's] judgment confirming the sale").[7]

The other cases relied on by Plaintiff are unhelpful. Claim preclusion was not at issue in *Tabas v. Tabas*, 47 F.3d 1280, 1289 (3d Cir. 1995), which examined the applicability of a settlement release to conduct occurring after the settlement. And *In re Prosser*, 534 F. App'x 126, 129-30 (3d Cir. 2013) concerned issue preclusion, not claim preclusion.

Plaintiff could have challenged the Bankruptcy Court's overruling of its objection to the fees by taking a direct appeal. (Tr. 39:15-42:21, 46:2-6, 21:11-22.) It did not. The doctrine of claim preclusion bars it from proceeding here.[8]

### C. Plaintiff's claims fail for other reasons.

Even if each of Plaintiff's claims were not barred by claim preclusion, I would still recommend that they be dismissed.

---

[7] Plaintiff cites two cases that purportedly support its assertion that it could not have brought its RICO claims in bankruptcy court, but neither of those cases support the proposition that a creditor may use RICO to collaterally attack a bankruptcy court's judgment overruling the creditor's objection to a disbursement. *See Copelin v. Spirco*, Inc., 182 F.3d 174, 181 (3d Cir. 1999); *Beard v. Braunstein*, 914 F.2d 434, 441-445 (3d Cir. 1990).

[8] Because I agree with Defendants that Plaintiff's claims are barred by claim preclusion, and because Defendants focused on claim preclusion at oral argument (Tr. 9:1-5), I do not address Defendants' arguments about issue preclusion.

### 1. The Amended Complaint fails to state RICO claims (Counts I-III).

"The RICO statute provides for civil damages for 'any person injured in his business or property by reason of a violation of [18 U.S.C. § 1962].'" *Tabas*, 47 F.3d at 1289 (quoting 18 U.S.C. § 1964(c)). To plead a violation of §1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Kennedy v. AT&T*, No. 18-1317-RGA, 2019 WL 2270422, at *4 (D. Del. May 28, 2019).

A RICO plaintiff must also have RICO standing. *See Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 265-268 (1992). RICO standing requires the plaintiff to have "suffered an injury to business or property . . . that . . . was proximately caused by the defendant's racketeering activities." *Schrager v. Aldana*, 542 F. App'x. 101, 103-04 (3d Cir. 2013). The RICO standing requirement is similar to the antitrust standing requirement, and both bar a plaintiff from proceeding in cases where her injury is too remote. *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 921 (3d Cir. 1999).

In the bankruptcy context, generally only the trustee can maintain an action for injury to the bankruptcy estate. *See Estate of Spirtos v. One San Bernadino Cty. Superior Court Case Numbered SPR 02211*, 443 F.3d 1172, 1175-76 (9th Cir. 2006) (collecting cases that stand for the proposition that "a bankruptcy trustee is vested with the exclusive power to raise legal claims on behalf of the estate"); *see also In re Dionisio*, No. 02-3020, 2003 U.S. App. LEXIS 12432, at *5, 2003 WL 21466777 (3d Cir. Apr. 17, 2003). In accordance with that principle, the Seventh Circuit recently held that a former creditor in a bankruptcy case lacked standing to pursue an antitrust action against BMS and Rabobank in district court. *See McGarry & McGarry*, 937 F.3d at 1065-66. The court pointed out that the creditor's claim that it received a smaller distribution as a result of the fees Rabobank deducted from the Chapter 7 account and paid to BMS "was entirely

derivative of the estate's injury." *Id.* at 1066. As a result, the Court concluded that the creditor's injury was "too remote to serve as the predicate for an antitrust suit." *Id.* at 1065. It further reasoned that the trustee was "a more appropriate person to pursue the claim should it be in the estate's interest to do so." *Id.* at 1066; *see also Spinner Consulting*, 604 B.R. at 678-79 (holding that a creditor in a Chapter 7 bankruptcy case lacked antitrust standing to pursue a claim against BMS).

Because the same remoteness inquiry applies to antitrust standing and RICO standing, Plaintiff lacks RICO standing in this case. As in *McGarry & McGarry*, Plaintiff's sole injury stems from the fact that the funds in the bankruptcy estate were decreased as a result of Defendants' actions. (D.I. 25 ¶ 2; D.I. 42 at 2, 20; D.I. 43 at 7.) It was the bankruptcy estate that suffered a direct injury, not Plaintiff.

Because I conclude that Plaintiff lacks RICO standing, I do not address Defendants' other arguments about the deficiencies in the RICO claims.

### 2. The Amended Complaint fails to state a claim under 42 U.S.C. § 1983 (Count IV).

Plaintiff's claim against Defendants under 42 U.S.C. § 1983 is frivolous. Suits under § 1983 can only be brought against defendants acting "under color of state law." *See, e.g., Faylor v. Szupper*, 411 F. App'x 525, 530 (3d Cir. 2011). Defendants are not state actors, and they were not acting under color of state law. Although Plaintiff's briefs ignored Defendants' arguments for dismissal, Plaintiff (wisely) agreed at oral argument that its § 1983 claim should be dismissed.

### 3. The Amended Complaint fails to state claims for common law fraud (Count V) or constructive fraud (Count VI).

The Amended Complaint also fails to adequately plead fraud or constructive fraud. Fraud claims require, among other things, a "misrepresentation." *See Gaffin v. Teledyne, Inc.*, 611 A.2d

14

467, 472 (Del. 1992); *In re Wayport, Inc. Litig.*, 76 A.3d 296, 327 (Del. Ch. 2013). Fraud claims are also subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires plaintiffs to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

Plaintiff's precise theory of fraud is unclear. But it is clear to me that the Amended Complaint fails to identify a false statement or misrepresentation made by any named Defendant to Plaintiff or anyone else.[9] Accordingly I recommend that the fraud claim be dismissed.

### 4. Civil conspiracy (Count VII) is not a standalone cause of action.

Count VII alleges that Defendants conspired to obtain fees to which they were not entitled. Under Delaware law, "civil conspiracy is not an independent cause of action" and "must arise from some underlying wrong." *Ramunno v. Cawley*, 705 A.2d 1029, 1039 (Del. 1998); *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 892 (Del. Ch. 2009) (dismissing conspiracy claim where the complaint failed to allege an underlying wrong). The Amended Complaint fails to allege an

---

[9] At oral argument, Plaintiff asserted that Defendants committed fraud by omission because they failed to tell the creditors of the Nexity Estate that Rabobank was turning over its fee to BMS. (Tr. 36:5-38:6.) But Plaintiff cited no authority in support of the proposition that a bank servicing a Chapter 7 estate has an independent duty to speak to creditors of an estate, and I am unaware of any. Moreover, the arrangement between Rabobank, BMS, and the Trustee was discussed by the Trustee, the U.S. Trustee, and BMS in open court while Plaintiff was present. And the Bankruptcy Court approved the fee notwithstanding Plaintiff's express objection that it "relate[d] to undisclosed services provided to the Chapter 7 Trustee that extend well beyond ordinary and necessary banking services." (Compl. ¶¶ 94, 95; D.I. 36, Ex. A; *In re Nexity Fin. Corp.*, No. 10-12293-BLS, D.I. 443 (Bankr. D. Del. Oct. 24, 2018).)

Plaintiff's briefing in this case dances around but never actually makes an allegation that trustees are in on the "scheme" because they receive services from BMS in exchange for allowing Rabobank to deduct fees from the estates' accounts. (Compl. ¶¶ 19, 35.) That may be because Plaintiff never took the necessary procedural steps to sue the trustee or bring suit on the estate's behalf. Under the *Barton* doctrine, Plaintiff must seek leave of the Bankruptcy Court to bring suit against the trustee. *In re VistaCare Grp., LLC*, 678 F.3d 218, 222, 232 (3d Cir. 2012). Similarly, Plaintiff would have needed the Bankruptcy Court's permission to file a derivative suit on the estate's behalf. *See In re Yes! Entm't Corp.*, 316 B.R. 141, 145 (D. Del. 2004).

underlying wrong on which a state law claim of conspiracy could be based.[10] Accordingly, the conspiracy claim should also be dismissed.

### 5. The Amended Complaint fails to state a claim for negligent misrepresentation (Count VIII).

Negligent misrepresentation claims require, among other things, a misrepresentation by the defendant. *Vichi v. Koninklijke Philips Elecs., N.V.*, 85 A.3d 725, 762 (Del. Ch. 2014). As explained above, the Amended Complaint fails to allege that Defendants made a misrepresentation. Accordingly, this claim should also be dismissed.

### 6. "Illegal and/or unauthorized distribution" (Count IX) is not a claim.

On its face, Plaintiff's claim for "illegal and/or unauthorized distribution" appears to be a straight-up collateral attack on the Bankruptcy Court's judgment. Plaintiff's briefing muddies the waters further and argues that the claim is based on Defendants' violations of the Bankruptcy Code, the Uniform Commercial Code, and Delaware state criminal code. Plaintiff has not explained how it has a private right of action against Defendants under any of those statutes, nor has it identified any authority recognizing a claim for "illegal and/or unauthorized distribution." Accordingly, I recommend that Count IX be dismissed.

### 7. The Amended Complaint fails to state a claim under "Federal Trade Commission Act Section 5" (Count X).

Count X is also frivolous. There is no private right of action under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45. *Gresham v. Ocwen Loan Servicing, LLC*, No. 17-203-MN, 2018 WL 6599901, at *4 (D. Del. Dec. 17, 2018). Plaintiff's briefs ignored Defendants'

---

[10] Although Count VII asserts that Defendants "committed embezzlement" against the bankruptcy estate, there are no facts alleged to support that assertion. As Plaintiff acknowledged at oral argument, Rabobank's deduction of the 1.75% fee was fully disclosed to the trustee and the Bankruptcy Court and was approved by the Bankruptcy Court. (Tr. 51:18-52:15, 53:5-12.)

arguments for dismissal of Count X, but Plaintiff stated at oral argument that the claim should be dismissed. (Tr. 62:6-12.)

### 8. The Amended Complaint fails to state a claim for unjust enrichment (Count XI).

Count XI alleges that Defendants were unjustly enriched because they were paid too much for the amount of services they performed. This is yet another improper collateral attack on the final judgment of the Bankruptcy Court. To the extent Plaintiff alleges that the estate overpaid Defendants for their services, the appropriate person to pursue that claim was the Nexity Trustee. *See In re Dionisio*, 2003 U.S. App. LEXIS 12432, at *5. Plaintiff has not cited any case authorizing an unjust enrichment claim under these circumstances, and I am unaware of any. I recommend that the unjust enrichment claim be dismissed.

## III. CONCLUSION

For the foregoing reasons, I recommend that Defendants' Motions to Dismiss be GRANTED and that the Amended Complaint be dismissed WITH PREJUDICE. Although this is the first time the Court has evaluated Plaintiff's claims, Plaintiff had the chance to litigate its objection to the fees in Bankruptcy Court, and Plaintiff has already amended its complaint once in response to Defendants' initial motions to dismiss. Defendants Rabobank and BMS successfully defended Plaintiff's objection in Bankruptcy Court, and Defendants have been subjected to two rounds of briefing here. Because I conclude that claim preclusion bars Plaintiff from challenging the Bank and Technology Services Fees charged to the Nexity Estate regardless of how its allegations are formulated, any further amendment would be futile. *See Barnard v. Verizon Commc'ns, Inc.*, No. Civ. A. 10-1034, 2011 WL 294027, at *9 (E.D. Pa. Jan. 31, 2011), *aff'd,* 451 F. App'x 80 (3d Cir. 2011).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B),(C), Federal Rule of Civil Procedure 72(b)(1), and District of Delaware Local Rule 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated October 9, 2013, a copy of which can be found on the Court's website.

Dated: January 31, 2020

Jennifer L. Hall
UNITED STATES MAGISTRATE JUDGE